HARDING, J.,
dissenting.
I respectfully dissent from the majority’s opinion regarding the reinstatement issue, and I would follow the referee’s disciplinary recommendation that Dunagan not be reinstated at this time.
While I recognize the Court’s broader scope of review regarding the referee’s recommendation regarding discipline, we *963 have previously stated “we will not second-guess a referee’s recommended discipline so long as that discipline has a reasonable basis in existing caselaw.” Florida Bar v. Vining, 761 So.2d 1044, 1048 (Fla.2000) (quoting Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997)).
In this case, the referee’s recommendation to deny Dunagan’s reinstatement is based not only on factual findings of faulty trust account administration, but it is also based on the following additional factual findings, which the majority concedes are supported by competent substantial evidence in the record: (1) while suspended, and in direct violation of his suspension order, Dunagan held himself out as an attorney in good standing by remaining attorney of record in at least five cases; (2) while suspended, and despite being notified by the Bar that during his suspension he could not have direct contact with any clients, Dunagan had impermissible direct contact with a client regarding the client’s legal matter; (8) while suspended, Dunagan allowed his name to appear as “attorney” in Marquis’s Who’s Who in American Law by failing to notify the publisher that he was not allowed to practice law, and instead informed the publisher only that his address had changed; and (4) while suspended, Dunagan failed in his duty to notify a company for whom he was conducting a collections law seminar that he had been suspended from the practice of law.[3] See Report of Referee at 1-4. Overall, the referee found that “[Dunagan] has not made a prima facie case establishing the basic elements required to prove rehabilitation.” Id. at 2.
These negative findings by the referee regarding Dunagan’s conduct during suspension constitute proper grounds for denying reinstatement. Even without the finding regarding trust accounting deficiencies, it is still clear that Dunagan has a basic lack of understanding of his status as a suspended attorney. On several occasions Dunagan held himself out to the public as a practicing attorney and engaged in misrepresentation by omission. It is also undisputed that Dunagan had improper direct contact with a client during the term of his suspension in direct violation of rule 3-6.1(d) and direction specifically provided to Dunagan by the Bar. Case law from this Court supports the determination that Dunagan’s conduct, even absent faulty trust account administration, constitutes proper grounds for denying reinstatement. See Florida Bar re Cohen, 560 So.2d 785 (Fla.1990) (approving referee’s denial of petition for reinstatement based on petitioner’s holding out self as an attorney and failing to notify clients during suspension); cf. Florida Bar v. Thomson, 354 So.2d 872 (Fla.1978) (reinstating suspended attorney who did not hold himself out to be an attorney in his contact with clients); see Florida Bar re Webster, 647 So.2d 816, 817-18 (Fla.1994) (denying petition for reinstatement because of “misrepresentation by omission”). Therefore, I cannot say that the referee’s recommendation that Dunagan not be reinstated does not have a “reasonable basis in existing caselaw.”
Moreover, I would disagree with the majority that the length of time suspended should be a predominant factor in determining whether a suspended attorney seeking reinstatement has sufficiently proven his rehabilitation and fitness to resume the practice of law, especially in light of factual findings supported by competent substantial evidence that demonstrate that person’s direct noncompliance with the dis *964 ciplinary order. “The mere passage of time is not evidence of rehabilitation.” The Florida Bar ex rel. Jahn, 559 So.2d 1089, 1090 (Fla.1990) (citing Petition of Wolf, 257 So.2d 547 (Fla.1972)).
Accordingly, I find no bases to deviate from the referee’s recommendation and would, therefore, approve the referee’s recommendation to deny Dunagan’s statement at this time. rein-
WELLS, C.J., concurs.

. The referee also found that (1) Dunagan relied on others to advise him of responsibilities under the Rules Regulating the Florida Bar and the law, and took action only when a problem was pointed out to him by someone else; and (2) while suspended, Dunagan showed no community involvement to establish evidence of present good character. See Report of Referee at 3-4.